May it please the Court, California law, which is quite different in this area than its Federal law, has really a two-part test to determine whether hours worked are compensable. And the two parts of the test, and it's an or, are whether the employee is actually working during the time in question, or if the employer, the employee isn't actually working. The case law talks about cases where people have to sleep, for example. So where the employee isn't actually working, the question is, is the employee subject to the control of that employer during the time in question? Here, we believe that the employee is both working and subject to the control of the employer. There's a subset to the working question, which is under the whistle-to-whistle doctrine, which says when an employee begins working at the first whistle to the last whistle of the day, whatever happens in between is compensable. So the three questions for this Court are, one is, is the drive time in question work in and of itself? If the answer to that question is yes, then it's compensable. Was there work done before the drive, which would be the first whistle of the day? If the Court were to find the drive not worked and not under control of the employer, if there was work done before the drive after the first whistle blows, then it would be compensable. If the Court finds that there was neither work done on the drive or if the drive itself was not worked, and that there was no work done before the drive, the last question for the Court is, are the employees nonetheless under the control of the employer during the drive? I suppose from your argument, if a worker who's going to commute makes telephone calls at home before they leave, that that's when the whistle blows. Well, that's correct, Your Honor. If there's work done which isn't de minimis at home, that is when the whistle blows and that's when the work starts. And if the employer suffers or permits that employee to make such calls. In this case, we have, of course, employees faxing things both before and after work. We have calls on the cell phone during the drive. Now, the only thing in evidence, I guess, for your client, the specific Mr. Stevens, I found the deposition testimony where he states he received calls from dispatchers very regularly, he says. But it doesn't indicate in that deposition whether these were 30-second calls or 15-minute calls. Is there anything in the record that would establish whether he was regularly taking calls of some length? It's a good question, Your Honor, and it goes to the question of whether the work is de minimis. There's been, and the answer to your question, I'll answer all of your questions directly, is no. There is nothing in the record as to the duration of those calls. We know that the calls were regular from the testimony, but we don't know the duration. But there's been no argument that the work done was de minimis. The argument from the defendant is that it's simply not work. And if I can get back to the is it work question, and I think this is a good segue to do so, I think where the district court originally misunderstood this case was what these people do for a living. And what they do is as follows. They deliver parts and equipment to a customer. Then they install those parts and equipment at the customer's location. So the question is, is driving to the customer itself work? Clearly, it's indispensable to the job of repairing spent parts and working, delivering OEM equipment, what they call the new equipment. You got to get it there somehow. They argue that this is somehow a commute. He's just driving to his work site. When in reality, what Mr. Stevens and the other workers are doing is they're delivering parts to be installed at the work site. So the work of these people is twofold. You have to get the parts there. Now, if they don't want to pay the repairman to get there, they can deliver the parts. They could call UPS. Some companies do have the parts delivered to the homeowner's home. And then the person could come and install them there. But of course, that costs the company money. I was under the impression that the driver, that Mr. Stevens, was taking just the parts and equipments that he needed for his own work and not acting as a delivery person and delivering other parts for their own sake. Is that incorrect? Let me give you the testimony. It's correct and it's incorrect, Your Honor. Let me give you the testimony from the 30B6 deponent who was the vice president of the West Coast Region Operations for Defendant. The question was, and this is at 440 and 441 of the record, briefly, sir, what is the business of GCS Services? And the answer was repairing commercial kitchen appliances, distributing and selling OEM appliance parts. The question, and by OEM, I assume you mean original equipment manufacturer. Answer, predominantly original equipment manufacturer, predominantly. For kitchen equipment, yes. So the question was, what do you do? And what they do according to this person is they repair and deliver. And under federal law, the question of whether work is work, and I know that sounds like a silly, but whether a task is work, is whether it's integral and indispensable to the job. If you've got a broken washing machine that needs a valve, unless you get the valve to where the washing machine is, the repair can't be done. So clearly, to answer the court's question, if it's a part that Mr. Stevens needed for his job, it's integral and indispensable that it gets there. Let's say that, assume that we decide that what Mr. Stevens was doing was an ordinary commute, and the only work he's really doing is the phone calls that he's taking during that drive. Would that alone, if the only thing we're looking at is the phone calls, would that alone make the whole drive work, or just the amount of time that he was actually talking on the phone? That brings us to the whistle-to-whistle doctrine, Your Honor. And the question is, when does the work begin? The work would begin with the first principal activity. Now, if the first principal activity is a phone call, then that begins the work. Of course, it gets into our control question, Your Honor. If you're required to take calls while you're on the road, that means that you have to have your telephone on. Was there evidence that he was required to take calls? Yes, Your Honor. And this is from 378 of the records. This is Mr. Stevens' testimony. I'm going to read from 378 and then 406 and 407. 378, I have. It's just in here. I'm sorry, Your Honor. 398. I misspoke. Okay. So the question is at line 3, Your Honor, and did you take calls in your truck typically? Did you? Answer, yes. Excuse me. I'm not seeing that on page 390. 398, Your Honor. 398. Thank you. Yes. Your Honor, I know that I have two minutes left. I would like to reserve some time, but I think this is an important discussion, so I'm requesting leave of the Court for some time at the end after we have this discussion. You can have a minute. Thank you. Thank you, Your Honor. And didn't you take calls in your truck? I'm sorry. I'm reading. And you didn't take calls in your truck typically, did you? Answer, yes. Question, how often would you take a call in your truck during your drive? Answer, usually whenever they called us. And next is the important section. But isn't it correct that there was no requirement for a GCS service tech to even have their cell phone, the company's cell phone, on during the commute? Answer, yes, it would have been on. So there is evidence. And, Your Honor, we are on summary judgment. And the question on summary judgment isn't how did the evidence get weighed, but whether there is evidence in the record. And clearly there is. There's more. Counselor, I have a question on that. If the driver gets a call and it says, you know, don't go to number six, Fifth Avenue, go to number 24th Avenue. Let's just go to a different location call. Is that work? Well, Your Honor, I think. Commences the, is that like the bell that starts the clock running or is that something else? I think the question, Your Honor, is, yes, it's work. The question is, is it de minimis? And the case law says that if the work is de minimis, it's not compensable. There is no evidence in the record whatsoever. And de minimis is a defense. And there is no evidence in the record that's not been argued that any work done in the truck was de minimis. So it's not plaintiff's. So well, whose burden is it to show that work was done? That was not de minimis. I mean, in other words, is it just your burden to show the call even for a second? His work and the defendant has the burden of showing it's de minimis. Or is it your burden to show that your client worked in a way that wasn't de minimis? This wasn't briefed, Your Honor, so I'm going to give you an answer off the top of my head. And we're happy to submit a letter to the court if the court thinks this is something that needs further briefing. My understanding is that de minimis is an affirmative defense. Now, again, Your Honor, that's off the top of my head. And I hesitate to give the court an answer off the top of my head. Don't bother addressing it. If we think we need something, we'll send a supplemental order out for briefing. Thank you, Your Honor. I would like to... Your time's up, but I will give you a minute for rebuttal. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, Raymond Kepner of Syklar Shaw, representing the appellees GCS Service, Inc. and Ecolab, Inc. The starting point, I believe, is to keep in mind here that under California law, commuting time is generally not compensable by the employer. And there are the two elements or two standards under California law that I think we all agree on. And that is, first, whether or not the commute is controlled by the employer or whether the employee is subject to the control of the employer during the commute, and whether the employee was suffered and permitted to work during the commute. There really is no whistle-to-whistle act doctrine or whistle-to-whistle doctrine in this case because of the facts of the case, which, as Mr. Stevens testified, he did not work at home. And if he did work at home, that might have implicated that doctrine. The real question before Judge Carney, and it's in the record here, is the compensability of the commute time itself. Let me ask you about the suffered or permitted. The district court said the crucial question is whether the commuting employee is engaged in any work-related tasks or exertion during the commute, apart from merely transporting herself to work. Do you agree with that phrasing of what the crucial question is for the suffered or permitted prong? No. I think the appellant has it wrong. And I think that the court actually below understood the controlling law. And this is important, I think, to keep in mind. The controlling law with respect to suffer and permit is drawn from Federal law. What's different about California law is the control test. And under the control test, the Merillian doctrine, it seems pretty clear that the elements of control in Merillian are lacking here. But if you're trying to determine whether suffer and permit is present for the purpose of compensability of time during the commute, you look to the body of Federal law. And Judge Carney recognized that, and he looked to a series of cases. Those are cited, I believe, most of them, at least, are cited at page 27 of our brief. There's also some cases he cited, like the Aikens case. And those cases basically establish that it depends on whether or not there is an exertion of effort or an exertion of the employee in doing work-related tasks during the commute beyond the effort of the commute itself. The deposition testimony indicates that he was required to have his cell phone on, and he took calls during that commute. And according to opposing counsel, there's no evidence in there as to the duration of these calls. Why aren't these calls that he's taking from the dispatcher work that he's undertaken, that the employer has suffered or permitted him to undertake? Well, the other aspect of that is that this work-related effort has to be more than de minimis. And Judge Carney, I believe, recognized that, and the cases recognized that. Well, he said there was no evidence. There was no evidence that he took calls or that he did any work, and yet there was. So he apparently missed this depo testimony. Well, there's other depo testimony from Mr. Stevens. In pages 606 and 607 of the record, there's depo testimony from Mr. Stevens himself, that he would call in generally after his first job. He would call in at the end of his first job. His initial testimony was that he did not have calls outside the commute. No, he said he received calls. I mean, there's obviously a difference between calling in and receiving calls. So I don't see why that's inconsistent. Well, I think the question, I think the answer to that really is in this body of cases. There has to be something more than something incidental to the commute. Well, how do we know it's incidental? How do we know he wasn't on the phone to these dispatchers for 15 minutes at a time? Well, there's no evidence from Mr. Stevens that he was. There's no evidence either way. Well, his testimony was that he spent his time commuting. And he did say he took some calls during the commute. But there's simply no evidence that those calls were anything other than calls incidental to the commute. He also argues, for example, that the mere transport of light tools or parts that he picked up not from his home to carry to the customer but tools that he would carry during the course of the day that happened to be in his truck during the commute, that he was transporting those tools and that that made the commute somehow compensable. Those federal cases basically reject that notion that the mere carrying. Counsel, I have a question. Yes. Let's assume we reject a whole bunch of the bases that appellants putting forward as work. But we conclude that he did get calls while he was driving to work. All right. And that that happened, let's say, three times a week. He didn't make calls, but he received calls and was supposed to keep his cell phone on. So I'll give you two situations. In one, he gets a call for five seconds, says, don't go to location X. Instead, go to location Y at this new address. And that's all the call is. In another hypothetical, he gets a call and they say, well, we have a customer with such and such a repair need. And we've worked out the system for how to deal with it. So let's walk through it for the next 15 minutes. And he talks about that. Now, the first case would seem de minimis. I don't know if the second one is. So is there a need for an evidentiary hearing on the scope of these phone calls? Or is it can it be handled in terms of of whose burden it is here? Just the question I asked your appellant colleague. Well, I think the burden certainly is on the appellant to raise an issue of fact here. And there's no evidence that there were any 15-minute calls that Mr. Stevens was taking. I think this question is really answered and can be answered as a matter of law and has been answered as a matter of law in these cases involving the canine officers, the canine cases. I believe one of the cases is the Aikens case and the Bobo case. But in Aikens, I believe in that case there's a ruling by the court that the police officers were required to have their police phone on during all times of their commute. And that fact shows up in some of these other police cases. And that is viewed as de minimis, even though the phone is on and they're getting calls, they're being dispatched, and, indeed, even in those cases, the police officers are required during the course of their commute to monitor what's going on along the path of their commute and to stop if there is something they observe because they are police officers. And so there's that level of engagement and activity that the police officers have in their commute far beyond what Mr. Stevens had. Mr. Stevens would be working, I suppose, if he had an assistant driving and if he was in the back of the van, you know, working on repairing his tools or something like that. That would be related to his primary activity. But he's not working when he's commuting and getting an occasional cell phone call, not under the line of Federal cases. And, again, there's the suffering from that principle here, and I think Judge Carney was right when he identified this, and no one's argued to the contrary, is drawn from the Federal principle brought into California law, and California law is no different than that principle. Is there any California law that tells us whether the plaintiff has the burden of showing that he or she did work that wasn't de minimis or whether, conversely, if the plaintiff shows they did even a five seconds of work and you don't know how much they did, that the defendant has the burden of showing it's de minimis? Not to my knowledge, Your Honor. I mean, the Marillion case is the controlling California case, and it does not discuss suffering from it as being a principle somehow different under California law than under Federal law. It does extend this, what is compensable under this control analysis, and that is the analysis that the plaintiffs, you know, brought this case on and argued this case on right up until the reply brief and summary judgment, which may explain, you know, to some extent, the nature of the record. They sort of raised this as a secondary argument after the control argument, after they weren't persuaded, I guess, by their own control argument. But the fact that yes. Go ahead and finish. I have a question I'd like to slip in. But the fact is there's nothing under California law that extends the suffering permit principle beyond Federal law and Federal cases. And those cases are just with really only one exception, and that's this Indiana case that Mr. Schneider keeps talking about, the district court case out of Indiana that was overturned by the Seventh Circuit. All of the other cases go in favor of the defendants, and they're asking for a radical departure from existing suffering permit principles. I'm not sure I have the position correct that you take. There's no California law that particularly helps us to decide this question. Do I understand correctly that we can look to Federal law when we're trying to decide California law? Is that your position? Under the Marooni – under the – the law in California is that an employee – work is compensable when it's under the law. I understand the law of California. My question was more specific. My question – let me repeat it. My question is can we look to Federal law, Federal labor law, to determine what the California labor law is? With respect to the suffering permit principle, yes, I believe that's correct. Is it true generally? For example, the de minimis issue, can we look to Federal labor law to determine what California would decide in relationship to the de minimis argument? With respect to the suffering permit principle, which it's a part of, yes, I believe so. Where California law departs is on this other issue about the controlling the commute or controlling the employee's time. Well, I was – that's what concerned me. There's some Federal law that I've looked at that would certainly strengthen your position. It hasn't been cited, but I wonder if it's a general view of counsel that we can look at Federal law on this issue of making our determination. I believe you can on the suffering permit principle, yes. That's right. Obviously, the control test, the control principle, you can't because that's an – that's where Federal law parts company. That's where State law, California law, parts company. I understand that. Specifically, my question went to the de minimis issue. I believe that's – I mean, Judge Carney went right to Federal law, and I think he was absolutely correct in that regard. And plaintiff's counsel and our courts have both looked to Federal law on that point. Could you just direct me in Marillion where in Marillion that principle is enunciated? Well, it's – there's an extensive discussion of the suffering permit principle in Marillion. Yes, by way of what the amici said, I believe. Is that right? And there's also a statement in Marillion to the effect that commute time is not Well, it's in the second part of Marillion where they really are talking about the portal-to-portal act. And in that discussion, of course, it's true that the federal portal-to-portal act is not incorporated into State law. But the suffering permit principle goes beyond that. I don't think Marillion stands for the proposition per se that suffer and commit can be brought into Federal law, but there's nothing in there that can be brought into State law, but there's nothing in there to suggest otherwise. And there is no other source of the principle. I mean, suffer and commit is a Federal principle. My understanding from Marillion was that they didn't accept the Federal standard and even noted how they differ substantially. The Federal statutory scheme differs from the State scheme. That's correct with respect to the control test, but not with respect to suffer and commit. Thank you. Well, you're over time. Thank you. Thank you, Your Honor. The Honor is absolutely correct. In the Overton case, at page 270, the Overton court tells us that the court referring to the Marillion court noted that Federal law differs substantially from State law and concluded that Federal law should be given, and this is a quote,  in interpreting the California wage orders. No deference. Is that only for the control problem, or did they not distinguish? It's not, Your Honor. As counsel tells you, that the Portal to Portal Act is where we get suffer and commit. And in Marillion, what the court says at page 590, talking about the Portal to Portal Act, is it talks about why the Congress brought the Portal to Portal Act and says, in contrast to these specific findings showing congressional intent underlying the Portal to Portal Act, the legislature has not similarly identified existing evils under State law. It goes on to say, therefore, California does not recognize the Portal to Portal Act. And that is evidence, Your Honor, in the DLSE letter, which is the letter, the 422-2003 letter that we cite in our papers, Your Honor. And in that letter, what the DLSE says is, I'm going to quote, also, if the travel involved the employee being required to deliver any equipment, goods, or materials for the employer, the travel, no matter how extended, would be compensable. So we have delivery here. Now, if you look at Federal law before the enactment of the Employee Commuting Flexibility Act, which was enacted by Congress as a direct consequence of the finding in Baker v. GTE, and it's in the legislative history, what the court said, the Federal court said. You'll have to sum up your overtime. Okay. If you could just finish that thought. Sure. What the court said in Baker was, transporting tools and equipment to work sites is a part of the plaintiff's regular work done in the ordinary course of business because it's necessary to the business. And that's our point here. If I may just answer Judge Gould's question about the burden on de minimis, Your Honor. Sure. We're on a motion for summary judgment here, Your Honor. Defendant didn't raise the issue of de minimis in their moving papers. I know of no law that says a plaintiff has a duty to meet every argument defendant could possibly raise in defending against a summary judgment. The burden is on the defendant, not on the plaintiff. Thank you. Okay. This case is submitted. And we have two additional cases that are submitted on the briefs, Leaf v. County of Los Angeles and Spiritos v. David Ray. Those two are submitted. And we're adjourned.
judges: Wallace, Gould, Ikuta